UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALENTINE GRDEN,

        Plaintiff,        CASE NUMBER: 09-10579
                              HONORABLE VICTORIA A. ROBERTS

v.

LEIKIN, INGBER & WINTERS, P.C.,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This case is before the Court on Defendant's motion to dismiss for failure to state a claim and for summary judgment (Dkt. #18). The matter has been fully briefed and the Court concludes that a hearing is unnecessary. *See* E.D. Mich. R. 7.1(e)(2).

For reasons explained, the Court **GRANTS** Defendant's motion.

**II.    BACKGROUND**

In August 2003, Mr. Grden was treated at Oakwood Annapolis Hospital ("Oakwood") in Wayne, Michigan, for a urinary tract infection. Oakwood transferred Mr. Grden's account to Comprehensive Collection Services, which referred it to Defendant Leikin, Ingber & Winters, P.C. ("LIW") for collection. When LIW received the account, on October 12, 2005, Mr. Grden's debt amounted to $2,902.35.

On October 20, 2005, LIW sent Mr. Grden a letter demanding payment. The parties apparently reached some form of unwritten agreement, because from November 2005 to November 2007, Mr. Grden made monthly payments of $75, except that he

paid $51 in October 2006.

In December 2007, Mr. Grden reduced his monthly payments to $50. He missed the February 2008 payment altogether. On March 17, 2008, LIW sent Mr. Grden a letter stating he was $150 in arrears, and asked that he make his account current "to avoid further action." Between April and October 2008, Mr. Grden continued making payments of either $50 or $75.

On November 10, 2008 LIW notified Mr. Grden by letter that his account was $350 in arrears and warned that legal action would follow unless he brought it up to date. The next day, LIW received a $50 payment from Mr. Grden for the month of November.

On December 28, 2008, Mr. Grden sent a check for $100, allegedly in response to the November 10 letter; LIW deposited the check on January 6, 2009, but the parties disagree as to when it cleared.

On December 17, 2008, acting on Oakwood's behalf, LIW filed suit against Mr. Grden in Michigan's 23rd District Court. However, Mr. Grden claims he only received service in late January 2009.

The lawsuit consists of three forms: (1) the complaint, which is signed by George Leikin in his capacity as Oakwood's attorney, alleges Mr. Grden owes $678.27 ($536.35 principal balance plus $141.92 interest), plus interest to the date of judgment, costs and fees; (2) a copy of Mr. Grden's account; and (3) a statement by Mr. Leikin titled "Combined Affidavit of Open Account and Motion for Default Judgment" ("the Combined Affidavit"), which asks the court, "upon the default of the Defendant(s) for non-appearance, to enter judgment for $678.27, . . . plus interest, costs and statutory

attorney fee."  (Def.'s Ex. E at 2.)

On February 6, 2009, after he was served with the lawsuit, Mr. Grden contacted LIW about his payoff balance.  An LIW employee told him it was $1,016.20, significantly higher than the $678.27 claimed in the lawsuit.  Mr. Grden requested proof in writing; he received a ledger statement indicating that he owed $1,016.20 ($721.27 unpaid balance, plus $294.93 interest), and $133 for expenditures.  Mr. Leikin signed the cover letter accompanying the ledger statement.  It stated: "Per your conversation with my office staff, I am forwarding you a breakdown of all expenditures and payments applied to this matter.  This communication is from a debt collector."  (Pl.'s Ex. H.)

On February 17, 2009, Mr. Grden filed this lawsuit, claiming that LIW violated the Fair Debt Collection Practices Act ("the FDCPA" or "the Act"), 15 U.S.C. § 1692 et seq., and the Michigan Occupational Code ("the MOC"), Mich. Comp. Laws ("M.C.L.") § 339.901 et seq.  However, Mr. Grden's complaint does not specify which FDCPA provisions were allegedly violated.  Mr. Grden also stated a claim against Oakwood, which was later dismissed by stipulation of the parties.

On April 24, 2009, LIW amended its state-court complaint to reflect Mr. Grden's $100 payment from December 28, 2008.  The amended complaint alleges Mr. Grden owes $578.27 ($436.35 principal and $141.92 interest), plus interest to the date of judgment, costs and fees.

LIW filed this motion on August 21, 2009.  LIW asks the Court to dismiss the MOC claim, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim for which relief can be granted.  LIW also moves for summary judgment on Mr. Grden's FDCPA claims, on grounds that: (1) it did not falsely represent the amount of Mr. Grden's debt;

3

(2) the incorrect balance quoted to Mr. Leikin was the result of bona fide error; and (3) the state-court lawsuit properly calculated the amount owed by Mr. Grden.

In his response to LIW's motion, Mr. Grden states that he does not challenge the amounts set forth in the state-court complaint. However, he claims the Combined Affidavit attached to the state-court complaint violates § 1692e of the FDCPA because it is false, misleading and deceptive. Mr. Grden also argues that, by giving him incorrect balance information by telephone and in the ledger statement, LIW violated §§ 1692e(2)(A), 1692e(2)(B), 1692e(10), and 1692f.

### III. ANALYSIS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hamilton v. Gen. Elec.*, 556 F.3d 428, 433 (6th Cir. 2009). The court must review the evidence in the light most favorable to the nonmoving party, and must also draw all reasonable inferences in the nonmoving party's favor. *Hamilton*, 556 F.3d at 433 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A material fact is one whose resolution might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *United States v. Dailide*, 227 F.3d 385, 389 (6th Cir. 2000). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Weigel v. Baptist Hosp.*, 302 F.3d 367, 375 (6th Cir. 2002). However, a mere scintilla of evidence supporting the nonmoving party's

position is not sufficient to survive summary judgment.  *Anderson*, 477 U.S. at 252.

In order to survive a motion to dismiss,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss for failure to state a claim, the district court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein."  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (*citing Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).

### A.  FDCPA Claims

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The Act prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  § 1692e.  The FDCPA also makes it illegal for a debt collector to use "unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.

The language of the Act is "'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem."  *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) (citation omitted).  "Courts have characterized the FDCPA as a

strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (citations omitted).

In determining whether conduct is deceptive within the meaning of the Act, the Sixth Circuit applies the "least-sophisticated-consumer" test.

> The least-sophisticated-consumer test is objective and is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "[A]lthough this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 509-10 (citations and internal quotation marks omitted).

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438-39 (6th Cir. 2008) (alteration in original). The least-sophisticated-consumer standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999) (*quoting Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).

The Sixth Circuit applies the least-sophisticated-consumer standard to violations of § 1692e, as well as § 1692f. *See Barany-Snyder*, 539 F.3d at 335 (using the least-sophisticated-consumer test to analyze alleged violations of §§ 1692e(2) and 1692f(1)); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998) (using the same standard for an alleged violation of § 1692e(10)).

Mr. Grden claims the Combined Affidavit attached to LIW's state-court complaint violates § 1692e because it is false, misleading and deceptive. He also argues that LIW

violated §§ 1692e(2)(A), 1692e(2)(B), 1692e(10) and 1692f when it gave him incorrect information by telephone and in the ledger statement.  The Court considers each alleged violation separately.

> **1.   15 U.S.C. § 1692e(2)(A), (B), and § 1692e(10)**

The FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt.  15 U.S.C. § 1692e.  The Act lists several types of conduct which violate this prohibition, including:

> . . .
> (2) The false representation of--
>    (A) the character, amount, or legal status of any debt; or
>    (B) any services rendered . . . by any debt collector for the collection
>       of a debt.
> . . .
> (10) The use of any false representation or deceptive means to collect or
>       attempt to collect any debt or to obtain information concerning a
>       consumer.
> . . .

*Id.*

> **a.   Combined Affidavit**

LIW's state-court action against Mr. Grden contains a document titled: "Combined Affidavit of Open Account and Motion for Default Judgment."  Mr. Grden claims the words "motion for default judgment," when used in a court document filed by a lawyer, are misleading to the least sophisticated consumer.  LIW does not address this argument.

Mr. Grden argues that by including the term "motion for default judgment" in the

Combined Affidavit, LIW sought to falsely imply that he failed to answer the complaint on time.  He claims "[the only conceivable purpose for filing such a document is to deceive Defendants into thinking they are in default and to discourage attorneys from taking their cases."  (Resp. 3.)  Mr. Grden also submits an affidavit from Adam Alexander, an attorney who represents debtors against debt collectors.  Mr. Alexander states he would be less likely to make an appointment for a potential client who received a document containing the words "motion for default judgment."  (Pl.'s Ex. F at ¶ 3.)  Mr. Alexander also states that several forms published by the State Court Administrative Office, and used by plaintiffs when defendants fail to respond to a lawsuit, contain similar language.  (*Id.* at ¶ 4b.)

The Sixth Circuit holds that affidavits attached to state-court complaints are communications governed by the FDCPA.  *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 599 (6th Cir. 2009) (Cole, J., dissenting) (*citing Gionis v. Javitch, Block & Rathbone, LLP*, 238 Fed. Appx. 24, 27, 29 (6th Cir. 2007) (unpublished) (affidavit attached to state-court complaint, suggesting incorrectly that a debt collector can recover attorneys fees, violates the FDCPA)).  *But see Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472-73 (7th Cir. 2007) (questioning, without deciding, whether the FDCPA regulates the content of state-court filings).

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  § 1692e.  The use of complicated or arcane terminology, if it has the tendency to confuse or mislead the least sophisticated consumer, falls within this provision.  The question, therefore, is whether the least sophisticated consumer could erroneously interpret the

8

term "motion for default judgment" to mean that he failed to answer the complaint on time.

Mr. Grden relies on two Sixth Circuit cases. In *Hartman v. Great Seneca Financial Corp.*, a debt collector ("Great Seneca") purchased the plaintiff's defaulted credit-card account from the card issuer. 569 F.3d 606, 609 (6th Cir. 2009). Great Seneca sued to recover the debt, and, to comply with Ohio law, supplied a "copy" of the plaintiff's account as an exhibit. *Id.* at 610. On its face, the exhibit resembled a credit-card statement, with accurate information about the debt and the amount owed; in fact, it was not an actual copy of the plaintiff's account, but a document prepared by Great Seneca's attorneys. *Id.* at 612. The plaintiff sued for violation of the FDCPA, but lost on summary judgment in district court. *Id.* at 608.

The Sixth Circuit reversed, holding that there was a genuine issue of material fact as to whether the exhibit could mislead the least sophisticated consumer:

> [The document] contains no information that would enable a consumer to determine what had been charged to or paid on this account, or when the debt was accrued. The only language in the document indicating that Great Seneca is a debt collector is the word "assignee," a legal term that would not necessarily help the least sophisticated consumer understand the relationships between the parties listed. . . . Given the fact that the document appears to be a recent credit-card bill, which it is not, and with few indications to the contrary, there is a genuine issue of material fact as to whether this document would mislead the least sophisticated consumer.

*Id.* at 613.

In the second case, *Gionis v. Javitch, Block & Rathbone*, a law firm ("Javitch") sued in state court on behalf of a credit-card issuer to recover delinquent funds. 238 Fed. Appx. at 25. The complaint contained an Affidavit of Indebtedness & Debt & Non-Military & Contract ("the Affidavit"), claiming that the card issuer could recover

9

reasonable attorney's fees and costs. *Id.* In fact, attorney's fees were not recoverable under any applicable law. The Sixth Circuit held that the Affidavit violated the FDCPA, because the least sophisticated consumer "reasonably might feel pressured to immediately pay the debt, even if she disputed its validity, in order to avoid the possibility of having to also pay [the debt collector's] attorney fees at some later date." *Id.* at 29 (citation omitted) (alteration in original).

*Hartman* and *Gionis* are inapposite. Mr. Grden does not allege that the Combined Affidavit is an inauthentic replica of an existing document, like the exhibit in *Hartman*. Nor does he claim that it misrepresents LIW's rights under applicable law, as was the case in *Gionis*. In fact, Mr. Grden's argument is not with the content of the Combined Affidavit, but with its form, specifically the use of the term "motion for default judgment" in its title. Mr. Grden seems to argue that the FDCPA restricts the use of legal terms of art like this one.

Courts reject this logic. In *Miller v. Javitch, Block & Rathbone*, a class of plaintiffs accused Javitch of using false and misleading statements in complaints filed on behalf of several debt-collection companies. 561 F.3d at 591. The named plaintiff, who defaulted on credit-card debt, argued that the complaint filed against her was misleading because: (1) it characterized her debt as a loan (in fact, credit-card debt is a merchant's account receivable, not a loan); (2) it incorrectly labeled her debt as "charge-card debt," which is different from credit-card debt; and (3) it claimed that the debt was acquired "for valuable consideration," suggesting the debt collector might enjoy holder-in-due-course protection. *Id.* The district court granted summary judgment for Javitch, and the plaintiffs appealed.

The Sixth Circuit reviewed each statement individually and held that none was misleading to the least sophisticated consumer. *Id.* at 592-97. In doing so, the court recognized that legal practitioners should be permitted "some leeway for the use of legal terms of art and other language that might be difficult for the least-sophisticated consumer to understand." *Id.* at 594. The court cited with approval the Seventh Circuit's decision in *Beler*, 480 F.3d at 473, which states: "[Not] everything a lawyer writes during the course of litigation must be stated in plain English understandable by unsophisticated consumers. However desirable that might be, it is not a command to be found in the FDCPA." *Miller*, 561 F.3d at 593 (alteration in original).

Here, LIW used a generic legal term to request a specific form of judicial relief. Mr. Grden does not dispute that had he failed to appear, LIW would have been entitled to a judgment of default. Nor is there any evidence that LIW made its request for the purpose of confusing or misleading Mr. Grden or an attorney. The Combined Affidavit clearly states: "Plaintiff . . . requests this Court *upon the default of the Defendant(s) for non-appearance*, to enter judgment for $678.27 . . . ." (Def.'s Ex. E at 2 (emphasis added).) "Upon default" means that default is contingent upon the defendant's failure to appear, not that the defendant is already in default. LIW could have expressed the same meaning more clearly, or perhaps without legal terminology, but the FDCPA does not require it. *See Beler*, 480 F.3d at 473 ("A rule against trickery differs from a command to use plain English and write at a sixth-grade level.").

The Combined Affidavit does not violate 15 U.S.C. § 1692e.

### b.   Telephone Conversation and Ledger Statement

In February 2009, after he received LIW's state-court lawsuit, Mr. Grden

contacted LIW by telephone and was told he owed $1,016.20.  At his request, LIW sent Mr. Grden a ledger statement, which listed the same amount.  LIW does not dispute that, in February 2009, Mr. Grden's actual balance was $578.27.  The ledger statement also included a $65 expenditure charge, which LIW admits Mr. Grden did not owe.

Mr. Grden claims that by quoting him an incorrect balance by telephone and in the ledger statement, LIW made a false, deceptive, and/or misleading representation in connection with the collection of a debt, in violation of 15 U.S.C. §§ 1692e(2)(A) and (10).  Mr. Grden also claims the $65 expenditure charge contained in the ledger statement violated § 1692e(2)(B).

LIW contends the telephone conversation and ledger correspondence were not communications made in connection with the collection of Mr. Grden's debt, and therefore did not violate § 1692e.  LIW does not address the $65 expenditure charge.

### i.     Connection with Debt Collection

The parties do not address whether the "in connection with" element of § 1692e is subject to the least-sophisticated-consumer standard.  The only court of appeals to rule on this question is the Seventh Circuit, which holds that whether a communication is in connection with the collection of a debt is a question of objective fact, not one to be determined from the debtor's point of view.  *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009).  The court explains that, if a lower standard applied,

> [u]nscrupulous debt collectors could shield themselves from liability simply by disguising their collection letters as something else.  The more deceptive the letters were, the more likely they would escape FDCPA liability.  Needless to say, Congress' intent in enacting the FDCPA was not to encourage debt collectors to deceive consumers; in fact, it was just the opposite.

*Id.* The Court finds the Seventh Circuit's reasoning persuasive.

Mr. Grden argues that, if a communication refers to a debtor and a collector, and the only relationship between them is the collection of the debt, the communication is "in connection with" the collection of that debt. Mr. Grden relies principally on *Ruth v. Triumph* for support. In *Ruth*, a debt collector ("Triumph") sent a debtor two letters in the same envelope. The first was a collection letter; the second was a privacy notice, which contained incorrect information about Triumph's right to share the debtor's personal information. 577 F.3d at 793. The debtor claimed the inaccurate statements in the privacy notice were false representations made in connection with the collection of her debt. *Id.* at 794. The district court granted summary judgment to Triumph; on appeal, the Seventh Circuit reversed. The appeals court held that the privacy notice was "in connection with" the collection of debt, because:

> The notice was sent in the same envelope as the collection letter, which the defendants admit was sent for debt-collection purposes. Both the notice and the letter refer to both defendants: Triumph Partnerships, the owner of the defaulted debt, and TAS, the company hired to try to collect it. The only relationship the defendants had with the plaintiffs arose out of Triumph Partnerships' ownership of the plaintiffs' defaulted debt. In sum, the defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt.

*Id.* at 799 (footnote omitted).

Mr. Grden claims that, like *Ruth*, his relationship with LIW arose only from the fact that LIW must collect his debt, and that LIW would not have communicated with him otherwise. Thus, he concludes, the telephone call and ledger correspondence were in connection with the collection of his debt.

The Court disagrees. Typically, the only relationship between a debtor and a

collector *is* the collection of the debt; therefore, if Congress intended § 1692e to govern every last communication between them, it could have easily done so. Instead, the legislature chose to limit § 1692e to conduct that is "in connection with the collection" of the debt, leaving other, unrelated conduct uncovered.

To fall under the ambit of § 1692e, the act or communication must be connected to an attempt to collect the debt. In *Ruth*, this connection arose from the fact that the privacy notice was mailed in the same envelope as a collection letter, making it objectively impossible to distinguish from an attempt to collect on the debt. *See also Miller v. Midland Credit Mgmt., Inc.*, 621 F. Supp. 2d 621, 631 (N.D. Ill. 2009) (stating, in identical circumstances: "Let us not be coy. A Privacy Notice that references the debt and is folded into the same envelope as a debt collection letter is a communication made 'in connection with the collection of a debt' for the purposes of 15 U.S.C. § 1692e.").

By contrast, LIW's attempt to collect the debt was independent of Mr. Grden's inquiry. In late January 2009, Mr. Grden received the complaint; on February 6, he called LIW and requested the ledger statement. Mr. Grden claims the lawsuit prompted him to contact LIW, but this is a subjective connection. Objectively, there is nothing to show that these separate events are linked, much less that they are an attempt by LIW to collect the debt.

Mr. Grden emphasizes that the ledger incorrectly states his balance, interest, and the total amount due on his account; he claims LIW highlighted these inaccurate figures in yellow in the statement he received. That may be true, but the fact that a communication contains false information does not make it an attempt to collect.

In *Bailey v. Security National Servicing Corp.*, the plaintiffs defaulted on their HUD-guaranteed mortgage and entered into a forbearance plan requiring payment of regular installments. 154 F.3d 384, 386 (7th Cir. 1998). HUD sold the debt to a private company, which hired the defendant to service the loan. *Id.* The defendant sent a letter listing the next four installments due, and stating that if the plaintiffs failed to make payments, they could be required to repay the full amount immediately. *Id.* The Seventh Circuit held that the letter was not in connection with the collection of the debt, because it only provided information about the plaintiffs' account status, and did not demand payment. *Id.* at 388-89. The court added: "A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed." *Id.* at 389.

The Court finds *Bailey* persuasive. The ledger statement does not demand payment, imply Mr. Grden is in default, or – unlike *Bailey* – allude to the consequences of default. Furthermore, it was Mr. Grden who initiated the telephone call and asked for the ledger to be sent. *See Francis v. GMAC Mortgage*, No. 06-CV-15777-DT, 2007 WL 1648884, 2007 U.S. Dist. LEXIS 41022, at *10 (E.D. Mich. June 6, 2007) (unpublished) (letters sent in response to debtor's inquiry are "remotely related," but not "in connection to," the collection of a debt); *McCready v. Jacobsen*, No. 06-2443, 2007 WL 1224616, 2007 U.S. App. LEXIS 9651, at *4 (7th Cir. Apr. 25, 2007) (unpublished) (letter sent in response to a tenant's demand to refund security deposit were not attempts to collect debt). Finally, the Court notes that LIW never cited the figures in the ledger statement in its lawsuit against Mr. Grden.

15

Applying an objective standard, the Court finds that the telephone call and ledger correspondence were not made in connection with the collection of Mr. Grden's debt. Thus, these communications violated neither 15 U.S.C. § 1692e(2)(A), § 1692e(2)(B), nor § 1692e(10), and the Court need not address LIW's bona fide error defense.

### 2. Violation of 15 U.S.C. § 1692f

The FDCPA forbids the use of "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount [not] expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Some courts describe § 1692f as a "backstop" provision, one that "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001) (*quoting Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).

Mr. Grden argues LIW violated § 1692f when it gave him incorrect balance information by telephone and in the ledger statement. The Court already determined these acts were not attempts, or connected to attempts, to collect Mr. Grden's debt; therefore, § 1692f was not violated.

It is unclear whether Mr. Grden claims the state-court action violated § 1692f, but the Court addresses the issue nevertheless. When LIW filed its complaint, on December 17, 2008, Mr. Grden's balance was $678.27 including interest. On December 28, Mr. Grden mailed a check for $100, which LIW deposited on January 6, 2009. In late January, Mr. Grden received the complaint; presumably, the check had cleared by then, and his actual balance was $578.27. However, when Mr. Grden asked about his payoff balance, LIW stated he owed $1,016.20. At that point, Mr. Grden

called his attorney.

The Court holds that, despite stating an erroneous balance, LIW's complaint did not violate § 1692f.  The complaint accurately stated Mr. Grden's balance on the date of filing, and there is nothing to suggest that LIW intended to deceive him into paying more than he owed.  At the time, Mr. Grden may gotten the impression that LIW was trying to mislead him or take advantage of him.  However, the evidence before the Court does not support this suspicion.

### B.   MOC Claim

LIW contends that Mr. Grden's state-law claim must be dismissed, because LIW is not a collection agency as defined by the Michigan Occupational Code.  Under the MOC,

> Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as . . . :
> . . .
> (xi) An attorney handling claims and collections on behalf of clients and in the attorney's own name.

M.C.L. § 339.901(b).

Mr. Grden appears to concede this point in his Response.  In any case, he offers no evidence that LIW qualifies as a collection agency under Michigan law.

### IV.   CONCLUSION

Summary judgment is **GRANTED** to LIW on claims for violation of the FDCPA (Count I); Mr. Grden's MOC claim (Count II) is **DISMISSED**.

Judgment will enter for Defendant.

**IT IS ORDERED.**

17

**S/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated: January 19, 2010**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 19, 2010.**
>
> **s/Carol A. Pinegar**
> **Deputy Clerk**

18